[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
This is an appeal from an April 15, 1999 judgment entry of the Ottawa County Municipal Court in which the court accepted a jury verdict finding appellant, Rickey D. Clink, guilty of driving under the influence of alcohol, in violation of R.C.4511.19(A)(1), and sentenced him. Appellant has presented six assignments of error for consideration on appeal that are:
 "I. THE TRIAL COURT ERRED IN NOT SUSTAINING THE APPELLANT'S CHALLENGE FOR CAUSE DIRECTED TO VENIREPERSON STEPHEN GLOOR AS BEING UNSUITABLE TO SERVE AS A JUROR.
 "II. THE TRIAL COURT ERRED IN ITS CHARGE TO THE JURY RELATING TO THE HORIZONTAL GAZE NYSTAGMUS TEST, SAYING IT'S ACCEPTABLE AND RELATING IT TO A BREATH TEST RESULT.
 "III. THE TRIAL COURT ERRED IN ITS CHARGE TO THE JURY BY REFERRING TO EVIDENCE OF A BREATH TEST.
 "IV. THE TRIAL COURT ERRED IN NOT SUSTAINING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE.
 "V. THE TRIAL COURT ERRED IN ALLOWING STATE'S REBUTTAL EVIDENCE OF SOME ALCOHOL SHOWN BY THE BAC DATAMASTER INSTRUMENT.
 "VI. THE TRIAL COURT ERRED IN NOT SUSTAINING THE APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL."
In support of his first assignment of error, appellant argues that the trial court erred when it ruled that a potential juror could not be removed for cause. He says that he used all of his peremptory challenges, and that the trial court's erroneous ruling forced him to waste one of his peremptory challenges to remove the potential juror who should have been removed for cause. He says he wanted to remove yet another juror with a peremptory challenge that he was forced to leave on the jury when he ran out of challenges.
Appellee responds that the standard of review for a trial court's ruling on a challenge of a juror for cause is an abuse of discretion. Appellee says that nothing in the record shows that the trial court abused its discretion in this case.
The record shows the following exchanges took place during voir dire regarding the potential juror and the subsequent challenge for cause:
 "THE COURT: * * * Do any of you know or are you related to any of the parties to this case or to any of the attorneys who represent them, either by blood or marriage, either way? Do you know or are you related to either of the parties or their attorneys who represent them? Okay. Mr. Gloor.
 "PROSPECTIVE JUROR GLOOR: What if I'm working with one of them?
 "THE COURT: Well, the question's pretty broad. Do you know or are you related to any of the parties. So who? Tell me.
"PROSPECTIVE JUROR GLOOR: Sergeant Gregg.
 "THE COURT: Okay. You know Sergeant Gregg. All right. That relationship, is that a professional relationship, social relationship?
"PROSPECTIVE JUROR GLOOR: Yes, it's both.
 "THE COURT: That prior relationship, would that cause you to — would you be in a position to put those aside and apply the instructions of law that I give on the matter and render a decision based solely on the facts and the merits of the case?
"PROSPECTIVE JUROR GLOOR: Can I come and talk to you?
"THE COURT: Approach, counsel.
"—
 "(Whereupon, counsel approached the Bench and the following proceedings took place.)
"—
 "PROSPECTIVE JUROR GLOOR: Being a police officer in Clay Township, I see Sergeant Gregg every time I work. Okay. So before I sit there and say I can do the case, I arrest people for what this man has been charged with.
"THE COURT: But the question is, can you be impartial?
"PROSPECTIVE JUROR GLOOR: Okay. Can I be impartial?
"THE COURT: Yes.
"PROSPECTIVE JUROR GLOOR: I believe so.
 "THE COURT: Can you base a decision on the facts that are presented by the parties and the instructions of law from the Court?
"PROSPECTIVE JUROR GLOOR: Well, I believe so.
"MR. SKAFF: I believe he can be a potential juror.
 "MR. KAHLER: I do not. It's quite obvious that Mr. Gloor is in some respects an agent of the prosecuting authority here, and he's friends. And I'm not criticizing him at all.
"THE COURT: We understand that.
"PROSPECTIVE JUROR GLOOR: I only work with him.
 "MR. KAHLER: Oh, I see. Oh, I see. Do you have past association, knowledge of Sergeant Gregg that would cause you to believe him maybe to a greater extent?
"PROSPECTIVE JUROR GLOOR: No.
 "MR. KAHLER: No. Would your having to sit, so to speak in judgment of his credibility here in this case that he's brought in, do you think that that would affect your relationship with him in the future should you find adverse to him?
"PROSPECTIVE JUROR GLOOR: No, no.
"MR. KAHLER: Do you want to be a juror?
"PROSPECTIVE JUROR GLOOR: Yes.
"MR. KAHLER: Thank you.
"* * *
 "MR. KAHLER: * * * Mr. Gloor, you are a police officer for Clay Township, aren't you?
"PROSPECTIVE JUROR GLOOR: That's correct.
"MR. KAHLER: And you know Sergeant Gregg here?
"PROSPECTIVE JUROR GLOOR: That's correct.
 "MR. KAHLER: And you've worked with him at least in passing, isn't that true?
"PROSPECTIVE JUROR GLOOR: That's correct.
"MR. KAHLER: And for how many years?
"PROSPECTIVE JUROR GLOOR: About twelve.
"MR. KAHLER: Have you pre-judged his credibility?
 "PROSPECTIVE JUROR GLOOR: I haven't heard the facts of this case.
 "MR. KAHLER: No. I'm not asking you about anything concerning the facts of this case. Have you pre-judged his credibility, whether he's a truthful person?
"PROSPECTIVE JUROR GLOOR: He's a credible individual.
 "MR. KAHLER: Would you have considerable difficulty finding otherwise after hearing him speak here today?
 "PROSPECTIVE JUROR GLOOR: Without hearing the facts of the case, no, I wouldn't say that.
 "MR. KAHLER: Would you feel you would be inclined to believe substantially, if not all, of what he says?
 "PROSPECTIVE JUROR GLOOR: I would be inclined to believe that facts that I hear.
 "MR. KAHLER: Does that mean that when Sergeant Gregg testifies you will consider what all he is saying to be factual?
 "PROSPECTIVE JUROR GLOOR: Any witness that takes the stand swears to tell the truth. I would accept their testimony as being factual.
 "MR. KAHLER: Do you work with the Ottawa County Sheriff's Department, do you?
 "PROSPECTIVE JUROR GLOOR: Yes, I work in conjunction with the Ottawa County Sheriff's Department. I do not work for them.
 "MR. KAHLER: Well, see, ideally we really shouldn't have, and I think you can understand why we shouldn't have a police officer serve in this case.
"MR. SKAFF: Objection, your Honor.
"THE COURT: Sustained, Mr. Kahler.
"MR. KAHLER: Yes.
 "THE COURT: There was an objection that's sustained, Mr. Kahler.
"* * *
 "THE COURT: Challenge for cause, first the State? Nothing? Challenge for cause? Defense?
"MR. KAHLER: I challenge for cause, Mr. Gloor.
 "THE COURT: Folks, can we just, just because I'm having a tough time hearing at this point in time, can we just keep it down just a little. I don't mind some informal discussion, but —
 "MR. KAHLER: Your Honor. Well, I would just put it this way. A fellow police officer having to sit in judgment of Sergeant Gregg's credibility is not rightfully and not totally fair and the acquaintanceship goes back.
 "THE COURT: Do you have a statute relative to the clause to that?
"MR. KAHLER: Unsuitability, Number 14.
"THE COURT: Any other argument?
"MR. KAHLER: No.
"THE COURT: Mr. Skaff?
 "MR. SKAFF: My argument would be only that when asked if he'd be able to listen to the facts of this case and set aside friendship, he indicated he would. And as far as being in the judgment of Sergeant Gregg, he's not. He in judgment of the defendant. [sic]
"THE COURT: All right. Anything more?
 "MR. KAHLER: I think it's very obvious. I don't think I need to say anything more about that.
 "THE COURT: All right. The Court is going to deny the request for challenge. We'll exercise the peremptory challenge."
The record further shows that appellant did use all of his peremptory challenges and that one of his challenges was used to remove the police officer from Clay township from the jury.
The Supreme Court of Ohio has said:
 "A trial court's ruling on a challenge for cause will not be disturbed on appeal unless it is manifestly arbitrary and unsupported by substantial testimony, so as to constitute an abuse of discretion. State v. Wilson (1972), 29 Ohio St.2d 203, 211. * * *
 "* * * While it is true, regarding the right to an impartial jury, that the proper focus is on the jurors who were seated, * * *, if the defense peremptorily excuses the biased prospective juror, but the defense exhausts its peremptory challenges before the full jury is seated, the erroneous denial of a challenge for cause in a criminal case may be prejudicial. Hartnett v. State (1885), 42 Ohio St. 568, paragraph four of the syllabus; State v. Tyler (1990), 50 Ohio St.3d 24, 30-31.
 "The reason for this rule is that an error by the trial judge in overruling a challenge for cause forces the defendant to use a peremptory on a prospective juror who should have been excused for cause, giving the defendant fewer peremptories than the law provides." State v. Williams (1997), 79 Ohio St.3d 1, 8.
For the reasons that follow, we find that when the above quoted standards are applied in this case, it becomes clear that it was prejudicial for the trial court to deny appellant's challenge for cause of the potential juror who was a police officer for Clay township.
First, we note that Crim.R. 24(B) lists the reasons a potential juror can be removed for cause. Crim.R. 24(B) provides, in pertinent part:
 "(B) Challenge for cause. A person called as a juror may be challenged for the following causes:
"* * *
 "(9) That he is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.
"* * *
 "(14) That he is otherwise unsuitable for any other cause to serve as a juror."
The Fifth District Court of Appeals considered a similar case.State v. Kirkbride (Apr. 1, 1994), Muskingum App. No. C.T. 93-15, unreported. In the State v. Kirkbride case, the trial court denied a challenge for cause to a potential juror who was a state trooper. The state trooper testified that for approximately twenty years he worked with the three local police officers who arrested the defendant in that case for resisting arrest. Like the officer in the case at bar, the state trooper said he did not believe his past relationship with the witnessing officers or his knowledge that he would work with them again in the future would affect his ability to be fair in the case.
The Fifth District Court of Appeals quoted all of the voir dire of the state trooper and then said:
 "We do not believe one could reasonably conclude from the above colloquy that Sergeant Moore's working relationship with the police who were directly involved in the state's charge of resisting arrest against appellant would not cause the sergeant to be biased in deliberating appellant's fate. As such, the trial court was required by R.C. § 2945.25(B) to dismiss Sergeant Moore as a perspective juror for cause. That statutory section provides:
 "`A person called as a juror in a criminal case may be challenged for the following causes: That he is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from examination of the juror or from other evidence, that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial;'
 "Accordingly, we sustain appellant's first assigned error and we reverse the judgment of conviction and sentence entered against appellant on the charge of resisting arrest, which charge was the only matter tried to the jury." Id.
Like the Fifth District Court of Appeals, we conclude that when the entire colloquy from voir dire in this case is considered, it was unreasonable, arbitrary and unconscionable for the trial court to deny appellant's challenge for cause of the potential juror who is a police officer for Clay Township. While the officer said he thought he could be fair, and that he wanted to be a juror, he also said he knew the arresting officer, that he worked with the arresting officer frequently, and most importantly, that he found the arresting officer to be credible. Since it is the sole province of the jury to determine which witnesses are credible, and therefore which version of facts is true, it is particularly troublesome that a potential juror who expressed a preconceived opinion on the credibility of the arresting officer in a case was not excused for cause. This situation is precisely what the provisions of Crim.R. 24(B)(9) and (14) are meant to address. If voir dire shows that a potential juror has a bias toward or in favor of one of the parties, or is otherwise unsuitable because they are not approaching the case without preconceived ideas regarding the facts of the case or the credibility of the witnesses, the court must dismiss the potential juror for cause.
Appellant's first assignment of error is well-taken. This case is reversed and remanded for a new trial.
Our disposition of the first assignment of error renders Assignments of Error Nos. Two[1], Three, Five and Six moot. However, Assignment of Error No. Four, relating to the pre-trial ruling denying appellant's motion to suppress evidence must still be considered.
In support of his fourth assignment of error, appellant argues that his motion to suppress should have been granted. He says the arresting officer did not have any reasonable, articulable suspicion that he was engaged in criminal activity, and therefore the officer's stop of appellant was in violation of his constitutional rights to be free from unreasonable search or seizure. He says one incident of driving right of the white line marking the outer boundary of his lane of travel is not sufficient to create a reasonable suspicion that he was violating traffic laws. In support, he cites a line of cases that follow the ruling that "A de minimus violation requires the officer to show other evidence that suggests impairment in order to justify an investigative stop." State v. Johnson (Aug. 25, 1998), Richland App. No. 98-CA-23, unreported (citing State v. Johnson (1995),105 Ohio App.3d 37).
Appellee responds that when the totality of circumstances are considered in this case, it is clear the arresting officer had reasonable, articulable suspicion that appellant was violating traffic laws. Appellee points to the testimony of the arresting officer at the hearing on the motion to suppress to support its argument.
We begin by noting that when this court reviews a trial court's ruling on a motion to suppress, this court:
 "must keep in mind that weighing the evidence and determining the credibility of witnesses are functions of the trier of fact. * * * Where there is substantial evidence to support the factual findings of the trial court, its ruling will not be disturbed on appeal absent an error of law." State v. Lopez (Dec. 3, 1993), Lucas App. No. L-92-422, unreported (citations omitted).
We have therefore applied this standard of review while considering appellant's fourth assignment of error.
The transcript of the motion to suppress, which appellant provided to this court in compliance with App.R. 9(A), shows that the arresting officer gave the following pertinent testimony on direct examination to explain why he stopped appellant.
 "Boldt: Can you tell us what caused you to stop and confront the defendant that evening?
 "Gregg: I was westbound on State Route 105, west of State Route 590, when I observed the vehicle coming towards me, the vehicle containing the defendant. Mr. Clink was driving off the right side of the roadway, driving past the white line approximately a foot, coming back up onto the roadway. At that point, as I was meeting him, coming pretty close to the centerline but not crossing the centerline.
 "Boldt: Can you tell us how that's marked, is that on State Route 590 or 105?
"Gregg: It's 105.
 "Boldt: How is that marked, what kind of lines are on that road?
"Gregg: In the area where we were, was a solid yellow line.
"Boldt: Are there any lines on the side of the road?
"Gregg: Yes, a solid white line.
 "Boldt: You indicated you saw him go off the road over the white line, is that correct?
"Gregg: Yes, correct.
"Boldt: How far over the white line did he drive his vehicle?
"Gregg: Approximately a foot.
 "Boldt: So, his tires on the one side would have been completely over the white line?
"Gregg: That's correct.
"Boldt: Past the white line?
"Gregg: That's correct.
 "Boldt: What did you do after, is that one of the things you might look for in someone who might have some problems driving?
 "Gregg: Correct, failing to drive in the marked lane of travel.
"Boldt: What did you do then after you saw this?
 "Gregg: When I first observed off the right side, an like I say, pretty abruptly came back up towards the centerline as I was passing. I hit my brakes to turn on the defendant, I was watching my mirror as I did so, and as I hit my brakes, the defendant hit his brakes also. I turned on him, went back eastbound to catch up with him as I, as I was nearing him, he made a right turn, or went southbound on State Route 590. On 590 there's a pull off for a fishing access at Portage River, he pulled into there, killing his lights as I was catching up at the point.
 "Boldt: You say killing his lights. Tell us, what does that mean?
 "Gregg: Shutting off his lights completely as he's pulling into the access. I turned the corner, he continued driving ahead approximately maybe 20 yards with his lights off. I actually activated my overheads at that point and pulled up behind the defendant." (number lines omitted.)
On cross-examination, the officer said that in his opinion, when appellant made the correction to cross back over the white line and drive within his lane of travel, he made an over correction. The officer said appellant drove so close to the center yellow line, the officer swerved his cruiser to the right to avoid any collision between their vehicles.
As the Second District Court of Appeals recently noted: "Recent precedent has held that a pretextual stop does not violate the fourth amendment so long as the stop follows an actual traffic violation. Whren v. United States (1996), 517 U.S. 806; Dayton v.Erickson (1996), 76 Ohio St.3d 3, syllabus." State v. Ward (Mar. 12, 1999), Darke App. No. 1472, unreported. The State v. Ward
court then noted that it had previously ruled that the cited rulings from the Supreme Court of the United States, and the Supreme Court of Ohio effectively overruled the Ohio line of cases that required something more than a de minimus traffic violation to give reasonable, articulable suspicion to justify a stop. Id.
The State v. Ward court noted that other appellate districts in Ohio ruled, even after the decisions from the Supreme Court of the United States and the Supreme Court of Ohio were released, that traffic stops are "invalid if the precipitating lane violation was de minimis." Id. The court said the dispute in Ohio regarding whether a de minimus lane violation is enough to make a traffic stop valid was irrelevant in the case before it, because the lane violation in question was not de minimus. The officer in State v.Ward believed that the defendant "was going to strike the rear of his police cruiser." The State v. Ward court found: "That crossing constituted a substantial marked-lane violation." Id.
First, we agree with the Second District Court of Appeals that the rulings it cited from the United States Supreme Court and the Supreme Court of Ohio established the rule that an officer who sees a traffic violation may stop the driver, even if the traffic stop is just a pretext. Second, we also find that the lane violation in this case was substantial, because the arresting officer was so convinced, after seeing appellant's driving, that he was in danger of being hit by appellant's vehicle that he swerved his own cruiser to the right to avoid a collision. Accordingly, we conclude that in this case there is substantial evidence to support the factual findings of the trial court, and its ruling that the officer did not violate appellant's Fourth Amendment rights when he stopped appellant is not an error of law. Appellant's fourth assignment of error is not well-taken.
The judgment of the Ottawa County Municipal Court is reversed in part and affirmed in part. This case is remanded for a new trial. Appellee is ordered to pay the court costs of this appeal.
JUDGMENT REVERSED IN PART AND AFFIRMED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 __________________________________________ PETER M. HANDWORK, J., JUDGE.
 __________________________________________ JAMES R. SHERCK, J., JUDGE.
 _________________________________________________ RICHARD W. KNEPPER, P.J., JUDGE CONCUR.
[1] While appellant's second assignment of error is technically rendered moot by the ruling that appellant is entitled to a new trial, see Frank v. Vulcan Materials Co. (1988),55 Ohio App.3d 153, 156-157, since even if some errors did happen during the trial there is no showing that the same errors will reoccur on retrial, id., we cannot help but express our grave concern that the jury instruction challenged by appellant in his second assignment of error appears seriously flawed. Pursuant to R.C.4511.19(A)(1) there is no "medically accepted" means of determining that an individual is driving a vehicle under the influence of alcohol — that is a factual question that must be decided by the jury after it hears testimony and makes credibility determinations in a case.