JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant James Hajdin appeals from the judgment entered pursuant to a jury verdict finding him guilty of breaking and entering, in violation of R.C. 2911, 13; theft, in violation of R.C.2913.02; and possession of criminal tools, in violation of R.C. 2923.24. For the following reasons, we reverse the decision of the trial court and remand for a new trial.
 {¶ 2} The record presented to us on appeal reveals the following: On November 20, 2001, Officers Carl Dooley and Marc Kruse of the Cleveland Police Department observed a white vehicle speeding and weaving in and out of traffic on West 73rd Street in Cleveland, Ohio. The officers followed the vehicle with their siren and lights on. After several blocks, the driver of the vehicle stopped and exited his car. The officers exited their cruiser and ordered the defendant to approach them with his hands out. The defendant was unable to produce a driver's license but did have the title to the vehicle he was driving. A status check of the defendant's vehicle revealed that defendant had a warrant for his arrest.
 {¶ 3} The officers arrested defendant, patted him down, and placed him in the back of the cruiser. On defendant's person, the officers found two credit cards, neither of which belonged to him, a gift certificate, made out to Cleveland Gourmet Corporation, and two bundles of cash.
 {¶ 4} The officers performed an inventory of the vehicle. During the inventory, they discovered a machete, two green moneybags labeled "NCB, National City Bank, Cleveland, Ohio," a pry bar, bolt cutters, binoculars and cellular phones. They also found two boxes: one containing $500 in quarters and the other containing $100 in nickels.
 {¶ 5} Sergeant Deborah J. Clare of the Cleveland Police Department was called to the location. She examined the gift certificate made out to Cleveland Gourmet Corporation at 4197 West 150th Street and called the dispatch center to see whether a break-in had been reported at that location.
 {¶ 6} Sergeant Clare went to Somer's Restaurant located at 4197 West 150th Street and was advised by two other Cleveland Police Officers that the restaurant had been burglarized. The back door had been pried open and the cash register and the manager's office had been rummaged through. While in the manager's office, Sergeant Clare recognized cardboard change boxes to be identical to the boxes found inside the defendant's vehicle.
 {¶ 7} On December 20, 2001, defendant was indicted by the Cuyahoga County Grand Jury on one count of breaking and entering, in violation of R.C. 2911.13; one count of vandalism, in violation of R.C. 2909.05; one count of theft, in violation of R.C. 2913.02; and one count of possession of criminal tools, in violation of R.C. 2923.24.
 {¶ 8} On February 6, 2002, defendant's jury trial began. At the trial, Gus Baz, the manager of Somers, testified that the credit cards found on defendant's person had been left at the restaurant by customers and placed in the cash drawer for safekeeping. He also identified the boxes found in defendant's vehicle containing the coins as the same type of boxes used by the restaurant to store coins. Finally, he testified that there was $200 in the cash drawer and $600 in his office.
 {¶ 9} Detective Maurice Hamilton of the Cleveland Police Department testified that he went to Somer's Restaurant on the morning of November 22, 2001. He testified that he observed the damaged door at the restaurant and opined that a pry bar, similar to the one found in defendant's vehicle, had been used to open the door.
 {¶ 10} On February 8, 2002, both parties rested and the jury retired to consider its verdict. Shortly thereafter, the judge, counsel for both parties, and the jury foreperson met in the judge's chambers where the jury foreperson advised all parties that a computer printout containing defendant's criminal history and police reports concerning the incident had been taken into the jury deliberation room. Specifically, this twenty-one page document was folded over a pry bar that had been admitted into evidence. Both parties denied responsibility for the exhibit's presence in the jury room.
 {¶ 11} The trial court questioned the jury foreperson and determined that two jurors had actually seen the document. The jury foreperson, however, advised the judge that the entire jury had been made aware that the defendant had a "wrap sheet [sic]." The judge asked the jury foreperson whether the jury could continue its deliberations and he said, "Yes." The judge then recalled the jury and inquired of the jury as a whole if they could continue their deliberations in an impartial manner to which they responded, "Yes."
 {¶ 12} On February 8, 2002, the jury returned guilty verdicts on the breaking and entering count, the theft count, and the possession of criminal tools count.[1] On February 21, 2002, defendant was sentenced to ten months incarceration on each count, to be served concurrently. This appeal timely followed.
 {¶ 13} Although defendant raises a number of issues on appeal, we find Assignment of Error II and IV to be dispositive.
 {¶ 14} "II. The trial court erred by allowing the jury to view inadmissible other acts evidence thereby denying the appellant the right to a fair trial.
 {¶ 15} "IV. The trial court erred by failing to grant a mistrial after it learned that the jury viewed inadmissible and prejudicial evidence."
 {¶ 16} In these assignments of error, defendant argues that he was unfairly prejudiced when the jury viewed inadmissible evidence of his criminal history. We agree.
 {¶ 17} A defendant is entitled to an impartial jury that is free from bias. State v. Wilson (1972), 29 Ohio St.2d 203, 211. Accordingly, due process mandates that a defendant be tried before a fair and impartial jury on conclusions reached from evidence and argument in open court — not by outside influence. Petro v. Donner (1940),137 Ohio St. 168; State v. Taylor (1991), 73 Ohio App.3d 827, 831; Cityof Cleveland v. Wade (Aug. 10, 2000), Cuyahoga App. No. 76652; State v.Starks (April 18, 1996), Cuyahoga App. No. 69441. A jury tainted with outside information affects not only the defendant's rights but also the public's interest in the integrity of the judicial process. City ofCleveland v. Wade, supra; State v. Ross (Dec. 31, 2002), Summit App. No. 20980.
 {¶ 18} Here, the jury was given outside information which contained a detailed and prejudicial synopsis of the incident as well as the defendant's extensive criminal history, including almost identical charges which had been previously filed against him.
 {¶ 19} Ordinarily, the existence of a prior offense should not be revealed to the jury unless specifically permitted under statute or rule. State v. Allen (1987), 29 Ohio St.3d 53, 55. In such a situation, the danger exists that the jury will infer from it a propensity of the accused to commit the crime charged and will incite them to convict based on past misconduct rather than restrict their attention to the offense at hand. State v. Lenoir (Sept. 12, 1997), Montgomery App. No. 15469; Statev. Dotson (April 28, 1992), Franklin App. No. 91AP-999. Clearly, this jeopardizes the right of the accused to a fair trial on those charges. Id. Indeed, Evid.R. 404(B) codifies the common law rule that evidence of other crimes, wrongs, or acts is not admissible as evidence of a defendant's commission of similar acts for which he is on trial.
 {¶ 20} The State appears to concede that this evidence was inadmissible but argues that defendant was not denied a fair trial because only one juror saw the report and "most of the jurors did not hear the juror's remark about the police report." (Appellee brief at 12). We disagree. The record reflects that the entire jury was made aware that the defendant had a "rap sheet" and a "history," even if not all of them knew the particulars contained therein. We can only conclude that defendant was prejudiced by the presence of this document in the jury room, which contained highly inflammatory and inadmissible material tending to prove that defendant had a bad character, thus leading to an inference that he acted in conformity with that bad character in the present case. The possibility of such an inference is precisely what Evid.R. 404(B) was designed to prevent. See State v. Harbert (May 29, 1996), Summit App. No. 17320; State v. Smith (June 7, 1985), Highland App. No. 547.
 {¶ 21} Although the trial court, after questioning the jury foreperson, issued curative instructions to the entire jury, it is difficult, from the record, to determine the effect, if any, the presence of this document had on the remaining jurors. The trial court should have inquired of the particular juror who looked at this document and should have also questioned the other members of the panel, since it is undisputed that they were all made aware of the existence of this "rap sheet" (itself a demeaning, negative term).
 {¶ 22} We find this error was prejudicial to the defendant in that it deprived him of a fair trial. We, therefore, sustain Assignments of Error II and IV and remand this case for a new trial.
 {¶ 23} Our disposition of these assignments of error moots any consideration of the remaining assignments of error. See App.R. 12(A)(1)(C).
Judgment reversed and remanded for a new trial.
It is ordered that appellant recover of appellee his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, J., and DIANE KARPINSKI, J., concur.
[1] The trial court dismissed the vandalism count of the indictment at the close of the defense case. The court reasoned that there was no evidence of the value of damages sustained as a result of the break-in at Somer's restaurant.