OPINION.
{¶ 1} The appellant-defendant, Richard Hill, appeals the March 31, 2003 judgment of the Common Pleas Court of Paulding County, Ohio, sentencing him to eleven months of imprisonment.
 {¶ 2} On November 15, 2002, the grand jury returned a four-count indictment against Hill. Count one accused the defendant of trafficking in drugs, specifically cocaine, in violation of R.C. 2925.03(A), a fifth degree felony. The second count alleged that the defendant engaged in the illegal manufacture of drugs in violation of R.C. 2925.04, a felony of the first degree. The third count charged the defendant with the illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041, a third degree felony, and the fourth count alleged that he received stolen property in violation of R.C. 2913.51(A), a felony of the fourth degree felony. These counts were alleged to have occurred on or about October 21-22, 2002.
 {¶ 3} The defendant entered a plea of not guilty to each count in the indictment on December 10, 2002. Subsequently, the State filed a motion to dismiss the second and fourth counts of the indictment, which the trial court granted on February 12, 2003. The case then proceeded to a two-day jury trial on February 12-13, 2003. At the conclusion of the trial, the jury returned verdicts of guilty on the two remaining counts in the indictment, trafficking in drugs and the illegal assembly or possession of chemicals for the manufacture of drugs. However, on February 26, 2003, the defendant filed a motion for a new trial and a motion for acquittal as to both counts. At the sentencing hearing on March 28, 2003, the trial court overruled the motion for a new trial but granted the defendant's motion for acquittal solely as to the charge of the illegal assembly or possession of chemicals for the manufacture of drugs. Thereafter, the court sentenced him to an eleven months term of imprisonment for the remaining count of trafficking in drugs. This appeal followed, and the defendant now asserts four assignments of error, which we elect to address in a different order from which they were presented by the defendant for ease of discussion.
The Defendant's Conviction On Count I of the Indictment Alleging AViolation Of Ohio Revised Code Section 2925.03(A), (C)(4)(a), Traffickingin Cocaine Was Against The Manifest Weight Of The Evidence.
 The Appellant was denied his right to the effective assistance ofcounsel in violation of the sixth and fourteenth amendments to theUnited States Constitution and Article I, Section Ten and Sixteen of the OhioConstitution.
 The Trial Court erred to the prejudice of the Appellant in failing toexcuse Juror Wolfle for cause.
 The Trial Court erred to the prejudice of the Appellant in overrulinghis Motion for New Trial.
 First Assignment of Error {¶ 4} In his first assignment of error, the defendant maintains that the jury verdict was against the manifest weight of the evidence. In reviewing whether the verdict was against the manifest weight of the evidence, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Adkins (Sept. 24, 1999), 3rd Dist. No. 5-97-31, 1999 WL 797144, citing State v. Martin (1983), 20 Ohio App.3d 172,175; State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 5} In making this determination, there are eight factors to consider, which include "whether the evidence was uncontradicted, whether a witness was impeached, what was not proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness' testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary." State v. Apanovitch (1987), 33 Ohio St.3d 19,23-24, citing State v. Mattison (1985), 23 Ohio App.3d 10, syllabus.
 {¶ 6} The defendant was charged with trafficking in drugs, a violation of R.C. 2925.03(A)(1), and more specifically trafficking in cocaine in violation of R.C. 2925.03(A) and (C)(4)(a). This section states: "No person shall knowingly do any of the following: (1) Sell or offer to sell a controlled substance[.]" R.C. 2925.03(A)(1). Further, "[w]hoever violates division (A) of this section is guilty of one of the following: * * * If the drug involved in the violation is cocaine * * * whoever violates division (A) of this section is guilty of trafficking in cocaine." R.C. 2925.03(C)(4). Trafficking in cocaine is a fifth degree felony. R.C. 2925.03(C)(4)(a). After the presentation of the evidence, the jury was instructed on the elements of complicity to trafficking in drugs, which includes aiding or abetting another in committing the offense of trafficking in drugs.
 {¶ 7} In the case sub judice, the defendant maintains that the evidence presented against him by the State merely showed that he was present when cocaine was sold to a police informant and that those who provided this testimony were unreliable and lacked veracity. Thus, he contends that his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 8} During the trial, Captain Douglas Engel of the Defiance County Sheriff's Office and director of the Multi-Area Narcotics Task Force ("MAN Unit") and Sergeant Clifton Vandemark, also with the Defiance County Sheriff's Office, who often assisted the MAN Unit, testified that they arranged for a confidential informant to purchase some cocaine from a suspected drug house. Both men testified that they searched the confidential informant, Allen Rosebrock, and his vehicle on October 21, 2002. Rosebrock was then given $475 to purchase the cocaine. The officers next observed Rosebrock drive to a home located at 18379 State Route 49 in Antwerp, Ohio, and enter the residence. They then positioned themselves where they could watch people coming and going from the home. After Rosebrock left the residence approximately twenty minutes later, they met him at a predetermined rendezvous point where they recovered the cocaine[1] he purchased and once again searched him and his vehicle for any contraband, none of which was discovered.
 {¶ 9} Rosebrock also testified at trial. He corroborated the testimony of Captain Engel and Sergeant Vandemark that he and his vehicle were searched both prior to and after the cocaine purchase. He further testified that he entered the residence on State Route 49 and asked Thai Hill, the defendant's son, for some cocaine. Thai then left the room and entered a bedroom while Rosebrock waited in the kitchen with Amanda Blevins, Thai's girlfriend. Blevins then went into the bedroom as did the defendant. Shortly thereafter, Blevins gave Rosebrock his requested cocaine, and he paid her and left. Rosebrock testified that he did not see either Thai or the defendant exit the bedroom prior to his departure from the home.
 {¶ 10} The State also presented the testimony of Blevins who testified that the defendant was in the bedroom when Thai gave her the cocaine to give to Rosebrock. Specifically, she testified that Thai called her into the bedroom, handed her the cocaine, and told her to take it to Rosebrock, which she did. She then took Rosebrock's money and brought it back to the bedroom and gave it to Thai, who was talking with the defendant at the time.
 {¶ 11} In addition, Thai Hill testified on behalf of the State. He testified that on October 21, 2002, Rosebrock came to the home on State Route 49 and asked him for cocaine. Thai further testified that he went to the bedroom to get some cocaine while Rosebrock waited in the kitchen. Upon entering the bedroom, Thai asked the defendant for the cocaine, and the defendant gave it to him. Thai then weighed the cocaine and called for Blevins to come into the bedroom and take the cocaine to Rosebrock, which she did.
 {¶ 12} Lastly, the State presented letters written by the defendant to his son, Thai. These letters contained instructions on what Thai should tell the police, as well as threats should Thai not follow his instructions. For instance, one letter included the following statement: "I will prove you a liar. Don't make me. Thai, guess what, if you fuck me over like this, I will pull out all the stops."
 {¶ 13} The defendant presented no witnesses to dispute the version of events given by these witnesses regarding the sale of cocaine to Allen Rosebrock. However, the defendant maintains that these witnesses were inconsistent with one another, that two of them were convicted felons who were testifying in exchange for leniency, and that another was paid for his testimony. To the contrary, the only inconsistency in the testimony of Amanda Blevins, Allen Rosebrock, and the two officers was in regards to the amount of money used to purchase the cocaine.
 {¶ 14} Here, the two officers testified that Rosebrock did not have any money on him prior to the cocaine purchase, was given $475 by Captain Engel to purchase the money, and returned to them with only cocaine and no extra money. Rosebrock testified that he thought he was given $500, paid Amanda $400 for the cocaine, and returned the remaining money to Captain Engel. However, Rosebrock testified that he was unsure as to the exact dollar amounts involved because he made several purchases for law enforcement at that location. Blevins also testified that Rosebrock gave her $400, yet she admitted to being high during this transaction. Other than this inconsistency, each witness present in the residence on that date provided identical information regarding where the defendant was during the drug buy.
 {¶ 15} As for the bias behind the testimony of Rosebrock, Blevins, and Thai Hill asserted by the defendant, the jury was made aware of each witnesses' possible motivation. However, the defendant asserts that Blevins and Thai Hill testified as a part of their plea negotiations. The record is devoid of any evidence in support of this assertion as both testified that they were not obligated to testify pursuant to their plea negotiations, and Thai further testified that he wanted out of the drug world and wanted his father out of it as well. In addition, Rosebrock admitted that he was paid by law enforcement to purchase cocaine on that night, but he was not testifying as part of a plea bargain or to "work off" any criminal charges.
 {¶ 16} Given the aforementioned evidence, the jury had ample evidence to conclude that cocaine, a controlled substance, was sold to Rosebrock on October 21, 2002. Further, based on the testimony of Thai Hill that his father gave him the cocaine in the bedroom to sell to Rosebrock, coupled with the testimony of Blevins and Rosebrock that the defendant was in the bedroom with Thai when Blevins entered to get the cocaine and when she returned with the money obtained from the sale, we cannot find that the jury clearly lost its way in determining that the defendant aided and abetted his son in the trafficking of cocaine. Thus, we do not find that the jury's verdict of guilty created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Accordingly, the first assignment of error is overruled.
 Third Assignment of Error {¶ 17} The defendant next asserts that the trial court erred in failing to dismiss a jury member for cause during voir dire. Specifically, the defendant maintains that juror Peggy Wolfle should have been excused for cause because she stated that her disdain for drugs would potentially color her view of this case. Thus, the defendant contends that the trial court should have excused her. We disagree.
Revised Code section 2945.25 states:
A person called as a juror in a criminal case may be challenged forthe following causes: * * *
 (B) That the juror is possessed of a state of mind evincing enmity orbias toward the defendant or the state; but no person summoned as a jurorshall be disqualified by reason of a previously formed or expressedopinion with reference to the guilt or innocence of the accused, if thecourt is satisfied, from the examination of the juror or from otherevidence, that the juror will render an impartial verdict according tothe law and the evidence submitted to the jury at the trial.
 R.C. 2945.25(B). In addition, the Rules of Criminal Procedure providean identical provision. See Crim.R. 24(B)(9).
 {¶ 18} A trial court's ruling on a challenge for cause will not be disturbed on appeal absent a showing of an abuse of discretion, which is shown by a ruling that is "manifestly arbitrary and unsupported by substantial testimony[.]" State v. Tyler (1990), 50 Ohio St.3d 24, 31, citing State v. Wilson (1972), 29 Ohio St.2d 203. Further, "[i]f the trial court erroneously overrules a challenge for cause, the error is prejudicial only if the accused eliminates the challenged venireman with a peremptory challenge and exhausts his peremptory challenges before the full jury is seated." Tyler, 50 Ohio St.3d at 30-31, citing State v.Eaton (1969), 19 Ohio St.2d 145, paragraph one of the syllabus, death penalty vacated (1972), 408 U.S. 935.
 {¶ 19} Here, trial counsel for the defendant challenged juror Wolfle for cause based upon answers that she provided during voir dire. During voir dire, juror Wolfle told the prosecutor that she did not believe that "the laws are strong enough against drug dealers." The prosecution then asked the following: "With that feeling, is it strong enough that you would not be able to sit here as a fair and impartial juror." Wolfle answered that she did not think she could because she was "very, very down on drugs." The prosecutor later inquired whether Wolfle would be willing to follow the instructions given by the judge in making her decision in this case, and she replied, "I'd sure try." Upon questioning by counsel for the defendant, Wolfle stated that her opinions on drugs would potentially color her view of this case, and the defendant challenged her for cause.
 {¶ 20} The trial court then informed juror Wolfle that the defendant was presumed innocent until the State could prove the defendant was guilty of the offense beyond a reasonable doubt. The court further questioned juror Wolfle as to whether she felt that she could "be fair and impartial in making the determination as to the guilt or innocence of a Defendant in a case involving drugs." Wolfle answered that she could, and counsel for the defendant declined further inquiry. The trial court then overruled the defendant's challenge. Voir dire of Wolfle continued, and she stated that she could return a verdict of not guilty if the State did not prove its case even though drugs were involved.
 {¶ 21} Based upon the various questions and answers provided during the voir dire of juror Wolfle, we do not find that the trial court abused its discretion in refusing to excuse Wolfle for cause. Counsel had sufficient opportunity to question Wolfle, and the court engaged in further inquiry and explanation as well. Once informed of the presumption of innocence and the requirement that the State prove its case beyond a reasonable doubt, Wolfle responded that she would be able to be fair and impartial as well as return a not guilty verdict if the State did not satisfy its burden. Thus, the trial court did not err in its decision to overrule the challenge for cause, and the third assignment of error is overruled.
 Fourth Assignment of Error {¶ 22} The defendant asserts in his fourth assignment of error that the trial court erred in overruling his motion for a new trial. Our review of this issue begins by noting that the Rules of Criminal Procedure permit a defendant to file a motion for a new trial for an "[i]rregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial[.]" Crim.R. 33(A)(1). However, the decision whether to grant a new trial lies within the trial court's discretion. State v. Schiebel (1990), 55 Ohio St.3d 71, paragraph one of the syllabus.
 {¶ 23} At the beginning of the trial, the jury was taken to the State Route 49 residence where the cocaine sale occurred so that they could better understand the evidence that would be presented to them. However, during jury deliberations, one of the jurors, who was unidentified, sent a note to the trial court declaring that he/she did not know whether he/she could be impartial based upon something viewed at the home. The trial court read this note to the parties and elected to provide the following response:
You must base your decision solely upon the evidence heard and seen inthe Courtroom. Anything that was observed at the scene cannot beconsidered in your deliberations. The view at the scene was only for thepurpose of helping you understand the evidence presented in theCourtroom. Can you base your decision solely upon the evidence presentedin the Courtroom?
 {¶ 24} Neither party objected to this response, and it was given to the jury. Thirty minutes later, the jury sent another question to the court in regards to the production of methamphetamines, yet no response to the trial court's previous question was given. The trial court responded to this note, and the jury returned a verdict of guilty approximately thirty minutes after the court's last response without ever having answered the question posed by the judge. Despite the juror's note regarding his/her ability to remain impartial, neither party elected to poll the members of the jury after the verdict was rendered.
 {¶ 25} Approximately two weeks after the verdict, the defendant filed his motion for a new trial based upon the trial court's failure to make further inquiry of the jury. The trial court overruled this motion, and the defendant now maintains that the trial court erred in so doing. We disagree.
 {¶ 26} Although the better practice in this situation may have been to make further inquiry of this juror to discover the problem and to assess the potential prejudice, the trial court did ask whether the juror could base his/her decision solely upon the evidence presented in the courtroom. The fact that this question went unanswered, coupled with the rendering of a verdict an hour later and subsequent to yet another unrelated note from the jury, indicated that the juror based his/her decision solely upon the evidence presented in the courtroom and understood the fact that the viewing of the scene was strictly for demonstrative purposes. Accordingly, we cannot find that the trial court abused its discretion in overruling the motion for a new trial as we do not conclude that the defendant was prevented from having a fair trial. Thus, the fourth assignment of error is overruled.
 Second Assignment of Error {¶ 27} The defendant next contends that he was provided ineffective assistance of counsel during both voir dire and the guilt phase of his trial. This Court has previously addressed the issue of ineffective assistance of counsel when a trial has taken place and has determined that courts must consider `"whether the accused, under all the circumstances * * * had a fair trial and substantial justice was done.'"State v. Jones (Sept. 27, 2000), Auglaize App. No. 02-2000-07, 2000 WL 1420271, at *2, quoting State v. Calhoun (1999), 86 Ohio St.3d 279, 289. In addition, attorneys licensed by the State of Ohio "are presumed to provide competent representation." Jones, supra, citing State v. Hoffman
(1998), 129 Ohio App.3d 403, 407.
 {¶ 28} The State of Ohio has also adopted the two-part test for determining whether a criminal defendant has been denied the effective assistance of counsel established by the United States Supreme Court inStrickland v. Washington (1984), 466 U.S. 668. See State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus. "A convicted defendant must first show that his attorney's performance `fell below an objective standard of reasonableness,' and must then show that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Jones, supra, quoting Strickland, 466 U.S. at 688, 694. As to the first prong of the test, courts are to afford a high level of deference to the performance of trial counsel. Bradley, 42 Ohio St.3d at 142. The second prong then requires a probability sufficient to undermine the confidence in the outcome of the trial. Id.
 {¶ 29} The defendant first maintains that his counsel was ineffective for failing to challenge two jurors, Tony Gray and Robert Miller, for cause. He bases this assertion upon the mere fact that these two jurors were former law enforcement officers. However, when asked by trial counsel for the defendant whether their experience and familiarity with the prosecutor would prevent them from being fair and impartial in the present case, both potential jurors responded that it would not. Both men also stated that they could return verdicts of not guilty in the event that the State did not satisfy its burden of proof. In addition, neither of these potential jurors currently was involved in law enforcement or with any of the witnesses. Thus, given our previous discussion of challenges for cause in the third assignment of error, it is unlikely that a challenge for cause, if made, would have succeeded in either case, and the defendant has failed to show how counsel's performance was deficient. Further, neither of these potential jurors actually served as jurors during this case because counsel for the defendant elected to use the first and fourth peremptory strikes to eliminate them both. Therefore, the defendant has failed to demonstrate how the result of trial would have been different but for his counsel's decision not to challenge jurors Gray and Miller for cause.
 {¶ 30} Next, the defendant maintains that his counsel was ineffective for failing to object to the trial court's refusal to excuse juror Wolfle for cause and then failing to use a peremptory challenge to remove Wolfle based upon her view of drugs. However, as previously noted, once the trial court and trial counsel for the defendant made further inquiry of juror Wolfle and explained the presumption of innocence, Wolfle acknowledged that she could be fair and impartial as well as return a verdict of not guilty if the State did not meet its burden. Thus, we determined in the third assignment of error that the trial court did not err in electing to retain Wolfle as a potential juror. Further, counsel's decision to eliminate other jurors rather than excuse Wolfle appears to have been a trial tactic. Debatable trial tactics, without more, do not constitute a deprivation of the effective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 49, cert. denied (1980), 449 U.S. 879. In fact, "many trial tactics may be questioned after an unfavorable result. A fair assessment of attorney performance requires us to eliminate the distorting effect of hindsight."State v. Post (1987), 32 Ohio St.3d 380, 388, certiorari denied (1988),848 U.S. 1079. There was no showing that the defendant was deprived of a fair trial by his counsel's tactical decision not to use a peremptory strike to eliminate Wolfle. Therefore, we do not find that the defendant was afforded ineffective assistance in this regard.
 {¶ 31} The defendant also contends that trial counsel was ineffective by failing to challenge juror Gary Shawver for cause because this potential juror indicated an inability to be impartial. First, juror Shawver was not ultimately impaneled as a petit juror due to the State's
decision to excuse him through the use of one of its peremptory strikes. Second, Shawver's stated bias was more in favor of the defendant because he believed that the court was "too harsh" in its treatment of his nephew. Thus, the assertion that his counsel should have challenged Shawver is meritless.
 {¶ 32} Lastly, the defendant maintains that trial counsel was ineffective for failing to object to leading questions and hearsay testimony, failing to call several witnesses on his behalf who would have contradicted the testimony of various State's witnesses, failing to request that the court remove the juror who indicated an inability to remain impartial after having viewed the State Route 49 residence, and failing to make a motion for acquittal. We disagree.
 {¶ 33} Initially we note that the defendant has failed to indicate where in the record the objections to hearsay and leading questions should have been interjected as required by App.R. 16(A)(7). Further, the defendant provided no indication of what witnesses he asserts should have been called on his behalf, the testimony they would have given, and/or how the outcome would have been different had these witnesses testified. Moreover, in the fourth assignment of error, we discussed the note provided to the court by a juror who questioned his/her ability to remain impartial and concluded that the defendant was not prevented from having a fair trial. In addition, we previously determined that the verdict of guilty as to the count of trafficking in cocaine was not against the manifest weight of the evidence. Thus, a motion for acquittal as to this sole remaining count did not have a reasonable probability of success. See, e.g., State v. Ligon (June 18, 2001), 3rd Dist. No. 4-2000-25, 2001 WL 676377. Based on the foregoing, the defendant has failed to demonstrate how his counsel was ineffective as well as how the outcome of his trial would have been different absent trial counsel's errors, if any. Therefore, the second assignment of error is overruled.
 {¶ 34} For these reasons, the judgment of the Common Pleas Court of Paulding County, Ohio, is affirmed.
Judgment affirmed.
WALTERS and CUPP, JJ., concur.
[1] The State presented documentary evidence that the substance purchased by Rosebrock from Thai Hill on that night contained 4.04 grams of cocaine.