—————————————

**CONCURRENCE**

—————————————

ALICE M. BATCHELDER, concurring.  I concur in the lead opinion in this case, and I agree with the views expressed by Judge Wellford in his separate concurrence.  I write separately only to indicate that in light of the discussion in *United States v. Martinez-Salazar*, 120 S. Ct. 774, 780 (2000) ("The defendant in *Ross*, we therefore concluded, did not lose any right conferred by state law when he used one of his 9 challenges to remove a juror who should have been excused for cause"), I question the continued viability of the passage from the Fifth Circuit's decision in *United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir. 1976), quoted by Judge Wellford.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0394P (6th Cir.)
File Name:  00a0394p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

MICHAEL E. WOLFE,
　　*Petitioner-Appellee,*

　　*v.*                                    No. 99-3596

ANTHONY J. BRIGANO,
Warden,
　　*Respondent-Appellant.*

—————————————

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 98-00215—Edmund A. Sargus, Jr., District Judge.

Argued:  June 15, 2000

Decided and Filed:  November 17, 2000

Before:  MARTIN, Chief Judge; WELLFORD and
　　　　　BATCHELDER, Circuit Judges.

—————————————

**COUNSEL**

**ARGUED:**  David M. Gormley, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellant.  Hyrum J. Mackay, PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER COMMISSION, Columbus, Ohio, for Appellee.  **ON BRIEF:** David M.

Gormley, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellant. Hyrum J. Mackay, PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER COMMISSION, Columbus, Ohio, for Appellee.

MARTIN, C. J., delivered the opinion of the court. WELLFORD (pp. 8-11), and BATCHELDER (p. 12), JJ., delivered separate concurring opinions.

————————————

**OPINION**

————————————

BOYCE F. MARTIN, JR., Chief Judge. Michael E. Wolfe is currently serving a life sentence for murder. Wolfe filed a federal habeas petition pursuant to 28 U.S.C. § 2254 arguing, in part, that his Sixth Amendment right to a trial by an impartial jury was violated by the presence of four biased and partial jurors. The district court granted Wolfe's petition. Respondent appeals. For the reasons stated below, we AFFIRM.

I.

Wolfe was tried in Gallia County, a rural county in Southern Ohio, before a jury of twelve persons. Under Ohio law, a defendant in a non-capital felony trial is entitled to four peremptory challenges, as well as an unlimited number of for-cause challenges. *See* Ohio R. Crim. P. 24. During *voir dire*, Wolfe challenged six potential jurors for cause. The district court excused one and overruled the rest of Wolfe's for-cause challenges. Wolfe removed one of the other five challenged potential jurors with a peremptory challenge and exhausted his remaining peremptories on three potential jurors whom neither side had challenged. Wolfe alleges that his Sixth Amendment right to an impartial trial was violated when the trial court forced him to try his case before a jury containing four biased jurors whom the court erroneously refused to remove for cause.

challenges for cause, require a grant of the writ of habeas corpus. I would strongly suggest, upon retrial of defendant Wolfe, that the trial judge consider carefully any further motion for a change of venue in light of this record.

credibility" of the prospective jurors with respect to a court's action on juror challenges. *Id.* at 428. *Witt* cites an old Supreme Court case, *Reynolds v. United States*, 98 U.S. 145, 157 (1879), to the effect that "[c]are should, therefore, be taken in the reviewing court not to reverse the ruling below [on juror challenges] . . . except in a clear case." 469 U.S. at 428 n.9. We note also that *Witt* involves a challenge in a death penalty case to excusing a potential juror.

With these admonitions in mind, and giving the trial judge what I believe to be due deference in this case, I believe this is a rare, clear case that compels us to affirm the district court's reversal of the state trial judge's challenged rulings. I join the district court's "reluctance" in reaching a decision to grant habeas corpus on these grounds, thereby overruling the decisions of Ohio state courts on the issues in this case.

Finally, where the defendant had exercised all his peremptory challenges, it was error for the Ohio Court of Appeals in this case to require defendant to exercise all his challenges to the particular four in question or be denied relief.

> To ensure that those who enter are purged of prejudice, both challenges for cause and the full complement of peremptory challenges are crucial. Therefore, as a general rule it is error for a court to force a party to exhaust his peremptory challenges on persons who should be excused for cause, for this has the effect of abridging the right to exercise peremptory challenges.

*United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir. 1976). We agree with *Nell* that the conduct of voir dire and exercise of the judge's "broad discretion" on challenges, although entitled to deference, is "subject to the essential demands of fairness." 576 F.2d at 1229 (quoting *Aldridge v. United States*, 283 U.S. 308, 310 (1931)).

The failure of the judge to recuse himself and his denial of a change in venue motion may not have been reversible error, but these factors, together with the erroneous rulings on jury

These four jurors all expressed doubts as to whether they could be fair and impartial. Two noted close and longstanding relationships with the victim's parents. The trial judge overruled Wolfe's for-cause challenges to these jurors without providing any supporting reason. A third juror admitted listening to and reading news accounts of the case and doubted her ability to put aside such reports and decide the case solely on the evidence presented at trial. In denying Wolfe's challenge, the trial court found only that the juror indicated that she could make a fair and impartial decision. The fourth juror doubted whether he would require the prosecution to prove its case beyond a reasonable doubt. The trial court denied Wolfe's challenge to this juror, finding that the juror had said only that a decision to acquit would be difficult, not impossible.

## II.

We review a district court's grant of a writ of habeas corpus *de novo*. *See Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997). Any findings of fact made by the district court are normally reviewed only for clear error, *see Greene v. Brigano*, 123 F.3d 917, 920 (6th Cir. 1997), but when the district court's decision in a habeas case is based on a transcript from the petitioner's state court trial, and the district court thus makes "no credibility determination or other apparent finding of fact," the district court's factual findings are reviewed *de novo*. *Moore v. Carlton*, 74 F.3d 689, 691 (6th Cir. 1996).

The United States Supreme Court's recent decision in *Williams v. Taylor*, 120 S.Ct. 1495 (2000), clarified the requirements for a federal court to grant a state prisoner's petition for a writ of habeas corpus under 28 U.S.C. § 2254(d)(1). Under § 2254(d)(1), the writ may issue if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The "contrary to" provision allows a federal habeas court to grant the writ if the state court arrived at a conclusion "opposite to that reached by [the Supreme] Court on a

question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 120 S.Ct. at 1523. Under the "unreasonable applications" clause, a federal habeas court may issue the writ "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Under § 2254(e)(1), the state court's factual determinations are entitled to a presumption of correctness, rebuttable by clear and convincing evidence. Even under this deferential standard of review, however, we are compelled to find that the state court's decision was contrary to clearly established constitutional law and its determination of the absence of juror bias was clearly erroneous.

### III.

The Sixth and Fourteenth Amendments to the Constitution guarantee a criminal defendant the right to an impartial jury. *See Morgan v. Illinois*, 504 U.S. 719 (1992). Any allegations of bias in the jury, however, must be preserved at trial, or they will be lost. *See Ross v. Oklahoma*, 487 U.S. 81, 85 (1988) (conditioning a defendant's right to challenge the failure to remove a juror for cause on whether the juror actually sat on the jury, and whether petitioner properly preserved his claim). The Ohio Court of Appeals concluded that Wolfe did not properly preserve his right to challenge the presence of four biased jurors on his jury because he failed to remove the jurors with his peremptory challenges. That court, however, did not have the guidance of *U.S. v. Martinez-Salazar*, 120 S.Ct. 774 (2000), where the Supreme Court rejected the argument that federal law requires a defendant to use a peremptory challenge to cure a judge's erroneous refusal to dismiss a juror for cause. In *Martinez-Salazar*, the Supreme Court stated that when a defendant objects to a trial court's denial of his for-cause challenge, the defendant may choose to either remove the challenged juror peremptorily and forgo a later Sixth Amendment challenge, or allow the juror to sit,

all four of his peremptory challenges, one to a law enforcement officer, retired after may years as a local police chief, who might well have been excused for cause.[2]

Chief Judge Martin has set out the details of the basis for excusing the four jurors for cause, Mr. Dillon, Mrs. McGuire, Mrs. Hughes, and Mr. Blazer. There is no question but there was extensive pretrial publicity in this case and at least two of the four jurors in question were very familiar with this publicity. The majority opinion puts it correctly, I believe, that the relationships of the four were, by and large, "close" and/or "ongoing" with the parties involved with the case. Dillon indicated, as did Mrs. Willis, who was excused for cause, that he was doubtful about his ability to be impartial "because of [his] knowledge of . . . the defendant and his family and also because of what [he] read."

Mrs. McGuire stated that the victim's family were "close friends," and she did not know whether she could absolutely set this aside as a juror. Mr. Blazer indicated he would have trouble holding the state to a "beyond a reasonable doubt" standard. Mrs. Hughes repeated several times in response to the judge's questions that she was "not sure" she could be fair and impartial but she "could try."[3]

We ordinarily defer to the discretion of the trial judge to determine whether, during voir dire, an individual juror "could follow the law and be fair and impartial." *State v. Williams*, 679 N.E.2d 646, 655 (Ohio 1997), *cert. denied*, 522 U.S. 1053 (1998); *see also Wainwright v. Witt*, 469 U.S. 412, 428 (1985) (a death penalty case); *State v. Wilson*, 280 N.E.2d 915 (Ohio 1972). *Witt* emphasized the import of a trial judge's opportunity during voir dire to weigh "demeanor or

---

[2]Former police chief Owens acknowledged that it would be difficult for him not to accept the testimony of sheriff's deputies whom he knew would testify for the state.

[3]Mrs. Hughes added, significantly: "I don't really feel comfortable . . . doing this."

---

### CONCURRENCE

---

HARRY W. WELLFORD, Circuit Judge, concurring. I find this case to be difficult and troubling. Defendant was involved in what must fairly be characterized as a sensational killing in a rural county of some 30,000 people. The circumstances were dramatic--tensions and arguments between two local residents over the affections of a young woman, also part of that small community, resulting in the fatal shooting of one of the young men. There was a great deal of publicity in the media about this dramatic episode. Despite defendant's understandable request for a change of venue, the motion was denied by the trial judge who admittedly knew the victim and had once represented the victim and had other casual associations with the victim's family.

Defendant's motion to recuse the trial judge was denied and the chief judge of the Ohio Supreme Court ruled that "[t]hese relationships are not sufficiently close nor recent enough to require the disqualification." That issue is not before us on appeal despite the fact that relief was not granted by the state courts nor by the district court on Wolfe's contention that this denial of recusal constituted reversible or constitutional error. This issue, however, is part of the unsettling background in this case along with the denial of a change of venue, indirectly related, I believe, with the refusal of that trial judge to grant challenges for cause to four jurors who were a part of the convicting jury.[1]

There seems to be little question but that defendant is entitled to four peremptory challenges in felony trials in Ohio (Ohio Rev. Code § 2945.21(A)(i) (1993)). Wolfe exercised

---

[1]The trial judge acknowledged at one point: "we're in a small community and you hear matters, and . . . you read things."

preserving the Sixth Amendment claim for appeal. *See id*. at 781.

Wolfe challenged six jurors for cause. The trial court granted one of his challenges. He removed a second juror with a peremptory challenge. The other four challenged jurors sat on his jury. After the jury was empaneled, he filed a motion to dismiss on the ground that the jury was biased, a motion he renewed at the conclusion of the trial. We are convinced that Wolfe properly preserved his Sixth Amendment claim, and we now address the merits of his argument that the four challenged jurors were biased and improperly allowed to sit on his jury.

### IV.

The Ohio Court of Appeals concluded that the trial judge did not abuse his discretion in refusing to excuse the four jurors Wolfe challenged for cause. We are aware that our review is deferential, respecting the trial judge's proximity to the venire and the determinations of credibility and demeanor that *voir dire* involves. *See Wainwright v. Witt*, 469 U.S. 412, 428 (1985). Nonetheless, we hold that the trial court unreasonably denied Wolfe's for-cause challenges and thus affirm the district court's issuance of the writ of habeas corpus.

In determining whether the trial court erred in denying Wolfe's for-cause challenges, this Court must ask: "did a juror swear that he could set aside any opinion that he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed?" *Patton v. Yount*, 467 U.S. 1025, 1036 (1984). Here, two jurors had continuous contact with the victim's family. The first juror had an ongoing business relationship with the victim's parents. He had spoken with the victim's parents and "listened to them" and did not think he could be a fair and impartial juror. The second juror said that she could be fair and impartial, but that she and her husband were "close friends" of the victim's parents, whom they visited quite a bit. Moreover, her husband had spoken with the victim's parents

about what they thought had happened when their son was killed, information that he related to her at some length. She conceded to defense counsel that it was "hard to say" whether she would be influenced by her relationship with the victim's parents.

Neither of these jurors stated unequivocally that they could set aside their relationships with the victim's parents and decide the case fairly. Although "[t]here is no constitutional prohibition in jurors simply knowing the parties involved or having knowledge of the case," *McQueen v. Scroggy*, 99 F.3d 1302, 1320 (6th Cir. 1996), the relationships here were close and ongoing. The first juror admitted that he might not be a fair and impartial juror. We find the second juror's assessment that she could be fair and impartial untenable, in light of both the close relationship between the juror and the victim's family, and the fact that she knew the family's theory of the victim's death. A court's refusal to excuse a juror will not be upheld "simply because the court ultimately elicits from the prospective juror a promise that he will be fair and impartial . . . ." *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 156 (3rd Cir. 1995).

The third juror that Wolfe challenged had read and heard news accounts of the crime, and expressed doubt as to whether she could put aside those reports and decide the case solely on the evidence presented at trial. The fourth challenged juror doubted he would require the prosecution to prove its case beyond a reasonable doubt. In the absence of an affirmative and believable statement that these jurors could set aside their opinions and decide the case on the evidence and in accordance with the law, the failure to dismiss them was unreasonable. *See Patton*, 467 U.S. at 1036.

From the record before us, it appears that the trial judge based his findings of impartiality exclusively upon each juror's tentative statements that they would try to decide this case on the evidence presented at trial. Such statements, without more, are insufficient. *See McKeen v. Goins*, 605 F.2d 947, 953 (6th Cir. 1979). The Sixth Amendment

guarantees Wolfe the right to a jury that will hear his case impartially, not one that tentatively promises to try. Failure to remove biased jurors taints the entire trial, and therefore, Wolfe's conviction must be overturned.

## V.

For the above reasons, we AFFIRM the district court's decision granting the writ of habeas corpus.