**Michael Earl YOUNG, Appellee,**

v.

**Gerald HOFBAUER, Appellant.**

**No. 01–1697.**

United States Court of Appeals,
Sixth Circuit.

Dec. 2, 2002.

Before BATCHELDER, COLE, and
GIBBONS, Circuit Judges.

OPINION

GIBBONS, Circuit Judge.

Michael Young was found guilty of first-degree murder on March 31, 1994, in Michigan state court. After exhausting his remedies with the Michigan courts, Young filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 in the

United States District Court for the Eastern District of Michigan. The district court granted Young's application for a writ of habeas corpus, finding that the trial court's conclusion that juror Randy Gifford would be impartial was clearly erroneous and that the trial court's refusal to dismiss Gifford for cause was unreasonable. Warden Gerald Hofbauer, through the Michigan Attorney General's Office, appeals the district court's grant of habeas corpus relief. For the reasons set forth below, we reverse the judgment of the district court.

## I.

On March 31, 1994, Young was convicted of first-degree murder for the May 27, 1990, shooting death of Marvelle Toney. The evidence at trial established that late in the evening on May 26, 1990, Young's aunt, Rosie Lee Miller, and two of her friends, Martha Calbert and Jennifer Clemmons, drove to the Soul Survivors Club in Saginaw, Michigan. Before entering the club, a dispute arose between Toney and Miller. Miller retrieved a crowbar from the trunk of her car and chased Toney with it. Miller and her friends then left the club parking lot and went to Calbert's home.

Clemmons and Barbara Barns testified that once the women arrived at Calbert's home, Miller got a gun and stated that she was going to kill Toney. Young, Miller's nephew, said that Miller should let him kill Toney. Young then placed a gun in the trunk of Miller's car, and he, Miller, Calbert, Clemmons, and Barns drove to the Soul Survivors Club. En route to the club, they planned how they would persuade Toney to come outside the club so that Young could shoot him. When they arrived at the club, Calbert lured Toney outside by telling him that she had car trouble. Once Toney was outside the club,

Young shot him twice. Toney died as a result of his wounds.

In December 1993, Young was arraigned on first-degree murder charges for the 1990 murder of Toney. At the time of his arraignment, Young was in prison for receiving and concealing stolen property. On December 31, 1993, while awaiting trial for the murder of Toney, Young was mistakenly released on parole. Three days after Young was accidentally released from prison, a female clerk at a 7–Eleven store in Saginaw, Michigan, was murdered. Young was implicated in the murder and was undergoing the preliminary examination for the charges arising from the 7–Eleven killing when his trial for the 1990 murder of Toney was about to begin. Considerable television and newspaper coverage connected with the 7–Eleven murder focused on Young.

Young's attorney moved for a change of venue in light of the pretrial publicity relating to the 7–Eleven killing. The trial court denied the motion. Young was tried for the 1990 murder of Toney, in Saginaw County Circuit Court, along with co-defendants Miller and Calbert. The jury convicted Young of first-degree murder, carrying a dangerous weapon with unlawful intent, and use of a firearm in the commission of a felony. On May 4, 1994, Young was sentenced to life imprisonment for the first-degree murder conviction, three to five years imprisonment for the carrying a dangerous weapon conviction, and two years imprisonment for the felony-firearm conviction, with all sentences to be served consecutively.

Young filed an appeal of right in the Michigan Court of Appeals, in which he claimed: (1) the trial court abused its discretion when it denied his motion for a change of venue in light of pretrial publicity relating to the 7–Eleven killing; (2) the trial court erred in refusing to excuse sev-

eral jurors for cause on the basis of their exposure to this pretrial publicity; (3) the trial court abused its discretion in denying his motion for additional peremptory challenges; (4) the voir dire violated M.C.R. 2.511(F); and (5) the prosecutor's closing argument denied him a fair trial by referring to the 7–Eleven murder. The Michigan Court of Appeals affirmed Young's conviction. *People v. Young*, No. 176222, 1997 WL 33352804 (Mich.Ct.App. April 8, 1997). Young next filed an application for leave to appeal to the Michigan Supreme Court, which was denied. Young then filed the instant petition with the United States District Court for the Eastern District of Michigan, claiming that he was denied his federal constitutional right to a fair jury trial by the failure of the trial court to grant a change of venue or strike jurors who had learned of exceptionally prejudicial, inadmissible evidence through the pretrial publicity. The district court granted Young's petition for habeas relief, concluding that the trial court's finding that juror Randy Gifford would be impartial was clearly erroneous and that the trial court's refusal to dismiss Gifford for cause was unreasonable.[1]

This timely appeal followed.

## II.

We review a district court's legal decisions in habeas corpus actions *de novo*. *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir.2000). Any findings of fact made by the district court are usually reviewed only for clear error, "but when the district court's decision in a habeas case is based on a transcript from the petitioner's state court trial, and the district court thus makes no credibility determination or other apparent finding of fact, the district court's factual findings are reviewed *de novo.*" *Id.* (quoting *Moore v. Carlton*, 74 F.3d 689, 691 (6th Cir.1996)). In reviewing habeas petitions, a state court's factual determinations are afforded a presumption of correctness. 28 U.S.C. § 2254(e)(1) (stating that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct"). The petitioner carries the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Because Young filed his habeas petition on February 1, 1999, after the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became effective, the provisions of the AEDPA apply to this case. Pursuant to the AEDPA, 28 U.S.C. § 2254(d), federal courts must utilize the following standards when reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

---

1. In his petition for habeas corpus relief, Young claims that the voir dire examinations of three jurors—Randy Gifford, Helen McClung, and Patricia Mueller—revealed that these jurors would be unable to decide his case impartially because they could not set aside their knowledge of Young's alleged involvement in the 7–Eleven murder. At trial, Young challenged these jurors for cause, but the trial court denied his challenges. The district court found that with regard to Gifford, Young's right to an impartial jury had been violated. The district court concluded, however, that the record fairly supported the trial court's decision that McClung and Mueller were impartial. The warden appeals from the district court's determination regarding Gifford. The district court's decision with regard to jurors McClung and Mueller is not presently before this court.

merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court discussed the requirements for habeas relief under § 2254(d)(1) in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In *Williams*, the Court held that in order to justify a grant of habeas corpus relief, a federal court must find a violation of law that is "clearly established" by holdings of the Supreme Court, as opposed to *dicta*, as of the time of the relevant state court decision. *Id.* at 412 (opinion of O'Connor, J.). The Court further held that the "contrary to" provision of the AEDPA allows a federal court to grant the writ only "if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may [issue] the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

According to the Court, "an unreasonable application of federal law is different from an incorrect or erroneous application of federal law." *Id.* at 412. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. Further, a federal habeas court making the "unreasonable application" inquiry should not transform the inquiry into a subjective one by inquiring as to whether reasonable jurists would agree that the state court's application was unreasonable. *Id.* at 410. Instead, the issue is "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

Similarly, a federal habeas court may not grant habeas relief under § 2254(d)(2) simply because the court disagrees with a state trial court's factual determination. Such relief may only be granted if the state court's factual determination was "objectively unreasonable" in light of the evidence presented in the state court proceedings. Moreover, as previously noted, the state court's factual determinations are entitled to a presumption of correctness, which is rebuttable only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Sixth and Fourteenth Amendments to the Constitution guarantee a criminal defendant the right to an impartial jury. *See Morgan v. Illinois*, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). Where the impartiality of a particular juror is at issue, the relevant question is "did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton v. Yount*, 467 U.S. 1025, 1036, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). A qualified juror need not be "totally ignorant of the facts and issues involved." *Murphy v. Florida*, 421 U.S. 794, 799–800, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). Instead, " '[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the

evidence presented in court.'" *Id.* at 800 (quoting *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)).[2]

A juror is not properly seated at voir dire, however, if he exhibits such hostility toward a defendant "as to suggest a partiality that could not be laid aside." *Id.* at 800. The United States Supreme Court has also cautioned that a "juror's assurances that he is equal to the task cannot be dispositive of the accused's rights, and it remains open to the defendant to demonstrate 'the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.'" *Id.* (quoting *Irvin,* 366 U.S. at 723). Moreover, according to this court, "[a] court's refusal to excuse a juror will not be upheld 'simply because the court ultimately elicits from the prospective juror a promise that he will be fair and impartial....'" *Wolfe,* 232 F.3d at 502 (quoting *Kirk v. Raymark Indus., Inc.,* 61 F.3d 147, 156 (3rd Cir. 1995)).

■ During voir dire, Gifford stated that he was familiar with the 7–Eleven killing. He indicated that the 7–Eleven location where the killing took place was either owned or operated by the in-laws of a man with whom he carpooled, Bill Blake. According to Gifford, he and Blake discussed the 7–Eleven murder a couple of times during their drive into work. The substance of their conversations regarding the 7–Eleven killing, however, was limited. For example, Gifford testified that he and Blake discussed the fact that the victim

had a razor in her pocket and that she was found in the parking lot. Gifford also testified that he had seen some television coverage of the murder. Based on television reports, Gifford was aware that Young had been accidentally released from prison while awaiting trial in this case.

Before allowing counsel for the parties to question Gifford, the trial court confirmed that Gifford could set aside any opinions he had formed based on the information he learned from Blake and the media and render an impartial verdict. Specifically, the trial asked Gifford whether he "could [ ] set aside the information ... from the media and [his] car pool buddy and render a fair, just and impartial verdict, based upon the evidence that will come forward from that witness stand and the law" as provided to him by the trial court. Gifford responded, "Yes, I think so." The trial court also asked Gifford whether based on what he "heard or read about the unrelated 7–Eleven matter," he had "a firm, fixed or positive opinion on what the verdict or outcome in this case should be?" Gifford answered, "No, I do not."

Counsel for Young then questioned Gifford about his knowledge of the 7–Eleven murder. Defense counsel asked Gifford if he and Blake discussed the 7–Eleven killing "with anger or derogatory comments," and Gifford responded that they "didn't go into the subject," but "just mentioned that she had a razor blade in her pocket and she might have used it." When asked by

---

2. In *Irvin,* the United States Supreme Court stated as follows:

> In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal

cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. 366 U.S. at 722–23.

Young's counsel whether what he knew about the 7–Eleven killing might "sift" into his decision-making process in this case, Gifford replied, "Consciously I don't think so; subconsciously, it might bring my mind back on to that." Gifford stated he would like to think it would not enter into his decision-making process, but stated, "it's possible, yes."

Following up on defense counsel's questions regarding his ability to be impartial, the prosecutor asked Gifford if he would "make a concerted effort in this case just to base [his] decision solely on the facts presented here in court...." Gifford answered, "Yes." The prosecutor then inquired as to whether Gifford could remind other jurors, during the course of jury deliberations, that the jurors must "decide this case only on the facts here" and without consideration for outside information. Gifford again responded, "Yes."

Based on the above voir dire testimony, Young challenged juror Gifford for cause and the trial court denied the challenge. The Michigan Court of Appeals affirmed the trial court's decision, noting that the trial judge impaneled jurors, including Gifford, who swore that they were capable of setting aside any information they previously heard regarding Young. In granting Young's petition for habeas relief, the district court stated that it "recognizes and accords deference to the state court's determination of credibility and demeanor," but found that it could not "ignore the plain words of the transcript" of the voir dire. The district court relied on what it described as Gifford's "expressions of doubt regarding impartially" in finding that Gifford's affirmative response when asked whether he could base his decision only on the facts presented at trial was not

sufficient to discredit or mitigate his earlier statements indicating that the information he learned about the 7–Eleven killing might "subconsciously" enter into his decision. Accordingly, the district court held the trial court's conclusion that Gifford was impartial to be clearly erroneous and its refusal to dismiss Gifford for cause unreasonable.

■ A trial court's determination of questions of juror credibility is entitled to "special deference." *Patton*, 467 U.S. at 1038. Where a prospective juror, subjected to extensive voir dire, has given ambiguous and at times contradictory answers, the trial judge is in the best position to render a judgment as to which of those ambiguous or contradictory statements are "the most fully articulated or ... appear[ ] to have been least influenced by leading." *Id.* at 1039. "[O]nly the trial judge [can] tell which of [the apparently contradictory] answers was said with the greatest comprehension and certainty." *Id.* at 1040. In denying defense counsel's challenge of Gifford for cause, the state trial judge stated that he had listened to Gifford closely and that, in the context of Gifford's mannerisms and figures of speech, he was "confident" that Gifford "could set aside the information he's received from Mr. Blake and the media, which is of a rather limited nature, and decide this case fairly, justly and impartially." Because the state trial court concluded, based on its credibility determination of Gifford, that Gifford could be impartial, and Gifford answered affirmatively when asked if he could set aside any opinion he might hold and decide the case on the evidence presented at trial, the district court erred in granting Young's request for habeas corpus relief.[3] *See Patton*, 467 U.S. at 1036.

---

**3.** The Supreme Court and the Sixth Circuit have enumerated various factors to be considered in determining whether a fair and impartial jury has been assembled, including:

Gifford acknowledged at voir dire that he learned about Young and his alleged crime from television and from Blake, his carpool partner. Gifford stated, however, both in response to questions from the trial court and the prosecution, that he would set aside this information and render a verdict based on the evidence presented at trial. Any statements by Gifford that arguably may be considered expressions of lack of impartiality were made in response to leading questions from defense counsel, and, therefore, such statements are less persuasive. *See Patton*, 467 U.S. at 1039 (noting that lay persons are not accustomed to leading questions and cross-examination tactics employed by attorneys and therefore cannot be expected to express themselves carefully or even consistently). In contrast, Gifford's affirmative statement regarding his ability to set aside his prior knowledge and render a verdict based on the facts presented at trial was made in response to a direct question from the trial court. Moreover, in responding to another direct question from the trial court, Gifford stated that he did not have a fixed opinion regarding Young's guilt in this case. It is appropriate for the trial court to take into account Gifford's demeanor and accept Gifford's statements that the court determines are the "most fully articulated" and the "least influenced by leading." *Id.* In this case, after listening to Gifford "closely" and taking into account Gifford's mannerisms and figures of speech, the trial court believed Gifford's statements that he could set aside his lim-

ited knowledge of the 7–Eleven murder and render a verdict based on the facts presented at trial.

Furthermore, the voir dire of Gifford "indicates no such hostility" toward Young "as to suggest a partiality that could not be laid aside." *Murphy*, 421 U.S. at 800. For example, Gifford made no statement as problematic as that by the juror in *Murphy* who admitted that "his prior impression of petitioner would dispose him to convict," a statement that the United States Supreme Court found insufficient to warrant reversal. *Id.* at 801. Moreover, the information regarding the 7–Eleven killing that Gifford described on the record was not inherently prejudicial or unduly probative of Young's guilt, particularly considering Gifford's assurances that he would decide the case on the facts presented at trial. *See id.* While not dispositive, such juror assurances are certainly one of the factors a trial judge can consider in determining whether that juror "can lay aside his impression or opinion." *Irvin*, 366 U.S. at 723. Accordingly, the trial court's finding that Gifford was impartial is supported by the record, and, therefore, not clearly erroneous.

Finally, Young did not present any evidence other than Gifford's voir dire testimony in support of his argument that Gifford was not impartial. The AEDPA provides that Young must rebut the presumption of correctness of the state trial court's factual determinations by clear and convincing evidence. As discussed

---

"the nature of the information the juror knew; how probative the information was as to a defendant's guilt; when and how they learned of that information; the juror's own estimation of the relevance of that knowledge; any express indications of partiality by a juror; whether the broader atmosphere in the community or courtroom was sufficiently inflammatory; and the steps taken by the trial court in neutralizing this information." *Gall v. Parker*, 231 F.3d 265, 308 (6th Cir.2000)

(citing *Murphy*, 421 U.S. at 802). In the present case, Gifford had limited knowledge of the 7–Eleven murder; the information Gifford possessed was not probative of Young's guilt; Gifford did not learn the information from anyone closely involved with the matter nor did he learn it during trial; and Gifford merely stated that the information he knew "might" "subconsciously" enter into his decision-making process.

above, the ambiguity in Gifford's voir dire testimony is insufficient to overcome the presumption of correctness owed to the state trial court's findings.

Because the state trial court's factual determination that Gifford was impartial is not clearly erroneous, its decision to deny Young's request to excuse Gifford for cause was not unreasonable. Moreover, the state trial court's determination was not contrary to and did not involve an unreasonable application of federal law, as determined by the Supreme Court. Therefore, the district court erred in granting Young's petition for a writ of habeas corpus.[4]

## III.

For the reasons set forth above, we reverse the judgment of the district court.

---

4. In support of his argument that the district court correctly found a lack of fair support for the state court's finding that Gifford was impartial, Young relies on this court's opinion in *Wolfe*, 232 F.3d 499. In *Wolfe*, the trial court denied the defense's challenges for cause of four prospective jurors for a murder trial. The first two prospective jurors were close friends of the victim's parents. One of those jurors did not think he could be a fair and impartial juror; another conceded that it was " 'hard to say' " whether her relationship with the parents would influence her. *Id.* The third challenged juror had read and seen news accounts of the crime and "expressed doubt as to whether she could put aside those reports and decide the case solely on the evidence presented at trial." *Id.* at 502–03. The fourth "doubted he would require the prosecution to prove its case beyond a reasonable doubt." *Id.* at 503. This court affirmed the district court's decision granting habeas corpus relief based on the trial court's failure to excuse these challenged jurors, stating, in pertinent part, "[i]n the absence of an affirmative and believable statement that these jurors could set aside their opinions and decide the

case on the evidence and in accordance with the law, the failure to dismiss them was unreasonable." *Id.* (citing *Patton*, 467 U.S. at 1036).

The present case is distinguishable from *Wolfe* because Gifford provided an affirmative and believable statement that he could set aside his opinions and decide the case on the evidence and in accordance with the law. While Gifford's affirmative statement of "Yes, I think so," could be considered equivocal, this court has noted that venire members "commonly couch their responses to questions concerning bias in terms of 'I think,' " and, therefore, "the use of such language cannot necessarily be construed as equivocation." *Miller v. Francis*, 269 F.3d 609, 618–19 (6th Cir.2001) (holding that the trial court's finding that counsel had not been ineffective in failing to challenge a juror who revealed during voir dire that she had some prior knowledge of the case was not an unreasonable application of clearly established federal law). Moreover, compared to the jurors in *Wolfe*, Gifford had relatively little knowledge of the case as a result of his contact with Blake and the media. *Id.* at 618.